IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARYUM AUTUMN TAHIRKHELI,

*Plaintiff*,

v.

ASCENSION VIA CHRISTI HOSPITAL
PITTSBURG, INC., et al,

*Defendants*.

Case No. 24-CV-2426-EFM-BGS

**MEMORANDUM AND ORDER**

Before the Court is Defendants Dr. Kathryn Cornelius and Sound Physicians Emergency Medicine of Kansas, LLC's (collectively, "Defendants") Motion to Dismiss (Doc. 29). Plaintiff Maryum Tahirkheli asserts that both Dr. Cornelius and Sound Physicians, among other defendants, are liable for violations of the Emergency Medical Treatment and Labor Act ("EMTALA")[1] (Count I), violations of the Kansas Consumer Protection Act ("KCPA")[2] (Count II), and intentional infliction of emotional distress (Count III). Defendants move to dismiss Counts I and II against them for failure to state a claim. For the following reasons, the Court grants Defendants' Motion.

**I.   Factual and Procedural Background**[3]

On May 24, 2024, Plaintiff took her 3-year-old daughter to the emergency room at the Ascension Via Christi Hospital (the "Hospital") because the child had woken up screaming and

---

[1] 42 U.S.C. § 1395dd.

[2] K.S.A. §§ 50-623 to -643.

[3] The facts in this section are taken from Plaintiff's Complaint unless otherwise cited.

inconsolable. At the Hospital Plaintiff was asked if the minor child could have ingested something while Plaintiff was sleeping. Plaintiff provided the Hospital staff with everything she could think of that was in the house that the minor child could have ingested.

During this inquiry, Plaintiff provided the Hospital with a box of sleep aid "gummies," and told staff that she had a box like it at home. Plaintiff explained that she had taken half of a "gummy" to help her sleep and wrapped the other half in paper and placed it in the box on a high shelf. Plaintiff did not look at the box upon leaving the house for the Hospital, so she did not know if the child had obtained it.

Upon hearing this information, Defendant Cornelius accused Plaintiff of possessing marijuana in her house and tested the minor child's blood for THC. However, the test results showed no signs of THC in the child's blood. Plaintiff claims that Hospital staff did not tell her that the child's blood test results were negative.

Plaintiff alleges that an hour later, Cornelius ordered a urine sample for the minor child via catheter to verify the THC results. At some later time, a handwritten document was created by an unknown person at the Hospital alleging the minor child's urine test was positive for THC.

After remaining at the Hospital for 5 or 6 hours without any updates, Plaintiff informed the Hospital staff that she and her child were leaving. But Cornelius confronted Plaintiff and told her that if she left the Hospital with the minor child, Cornelius would call the police. At this point, Cornelius told Plaintiff the minor child had "THC intoxication" but did not show any test results to Plaintiff despite Plaintiff requesting to see them.

Plaintiff left the Hospital with her minor child. Cornelius then instructed the Hospital staff to call law enforcement. When police arrived at the hospital, Cornelius provided them with "false

information" about Plaintiff and the minor child.[4] Plaintiff was subsequently arrested, and the minor child was removed from her custody and transported back to the Hospital. Eventually, the child was returned to her father who was in an ongoing custody dispute with Plaintiff.

Plaintiff ultimately spent two days in jail, lost her job as a certified nursing assistant (CNA), is now unable to use her CNA certification, must pay for supervised visits with her minor child, suffers public humiliation from her arrest, and continues to suffer from emotional distress and pain due to these events.

On September 16, 2024, Plaintiff filed suit against Dr. Cornelius and Sound Physicians, among other defendants, alleging violations of EMTALA and KCPA and intentional infliction of emotional distress. On December 6, 2024, Defendants Cornelius and Sound Physicians filed a Motion to Dismiss EMTALA and KCPA claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Timely responses and replies were filed. The matter, being fully briefed, is now ripe for the Court's ruling.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[5] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[6] A claim is facially plausible if the plaintiff pleads facts

---

[4] Plaintiff does not explain in the Complaint what this "false information" entails, but she clarifies in her Response that the "false information" is: (1) that the minor child's blood tested positive for THC when it did not; (2) that Plaintiff had been at the hospital for a short time when Plaintiff had been there most of the night; and (3) that Plaintiff was in possession of illegal THC when Plaintiff was not.

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[7] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[8] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[9] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[10] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[11]

### III.     Analysis

#### A.     EMTALA Claim

In Count I, Plaintiff claims that Defendants Cornelius and Sound Physicians violated EMTALA. Although the pleadings are unclear, the Court construes Plaintiff's Complaint to accuse Defendants of failing to (1) determine whether Plaintiff's child suffered from an emergency medical condition, (2) obtain Plaintiff's informed consent for her child's treatment, (3) involve Plaintiff in the development and implementation of her child's treatment plan, and (4) respect Plaintiff's and her child's privacy and safety.

---

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[9] *Iqbal*, 556 U.S. at 678–79.

[10] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[11] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

Defendants claim that EMTALA only creates a private cause of action against hospitals—not physicians or other non-hospital entities. Thus, because Defendant Cornelius is a physician and Defendant Sound Physicians is not a hospital, Plaintiff fails to plausibly bring an EMTALA claim.

In her Response, Plaintiff concedes that EMTALA does not create a private cause of action against a physician. But Plaintiff reaffirms her claim that EMTALA applies to Sound Physicians, arguing that it is liable by way of vicarious liability.

EMTALA states, "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action *against the participating hospital*, obtain those damages available for personal injury under the law of the State in which the hospital is located."[12]

The Tenth Circuit has interpreted this plain language to exclude physicians and other non-hospital entities from suit.[13] As such, Plaintiff's EMTALA claim against Defendants Cornelius and Sound Physicians is dismissed.

**B.    KCPA Claim**

In Count II, Plaintiff claims that Defendants Cornelius and Sound Physicians violated the KCPA. Specifically, Plaintiff contends that Defendants engaged in deceptive acts and practices when they willfully, wantonly, and maliciously, made false statements and representations to Plaintiff.

---

[12] 42 U.S.C. § 1395dd(d)(2)(A) (emphasis added).

[13] *See, e.g.*, *Delaney v. Cade*, 986 F.2d 387, 394 (10th Cir. 1993) ("individuals can bring civil actions only against participating hospitals," and not against physicians under EMTALA); *Davison v. Stout*, 44 F. App'x 404, 405–06 (10th Cir. 2002) ("EMTALA authorizes suits against hospitals only."); *Shepeard v. Labette Cnty. Med. Ctr.*, 2012 WL 1092399, at *2 (D. Kan. Mar. 30, 2012) (dismissing suit against an ambulance service because it was not owned or operated by a hospital).

Defendants argue that Plaintiff's KCPA claim fails because no statements Defendant Cornelius made to Plaintiff impacted her damages. Defendants contend that, if anything, the statements Defendant Cornelius allegedly made to law enforcement caused Plaintiff's supposed damages.

Plaintiff responds that the Complaint should be read as a whole, and she should not be held to the specific language in Count II. Yet, even under Plaintiff's novel interpretation, Defendants argue that the KCPA claim still fails because any statements made to law enforcement were not made in connection with a consumer transaction.

The Court agrees with both of Defendants' arguments. First, the plain language of the Complaint reveals that Plaintiff intended to bring this claim against Defendants for the statements Defendant Cornelius made to *Plaintiff*, not the statements she later made to *law enforcement*. But when looking at the events which caused Plaintiff's damages—including her arrest, incarceration, lost custody, and lost employment—they all stem from Defendant Cornelius's alleged statements to law enforcement. Thus, without allegations of a causal connection between the statements Defendant Cornelius made to Plaintiff and the harm Plaintiff suffered, Plaintiff's KCPA claim must be dismissed.

But even if the Court construes Plaintiff's Complaint extremely liberally to include statements Defendant Cornelius made to law enforcement, another issue precludes ruling in Plaintiff's favor. Namely, the Complaint fails to allege that Defendant Cornelius's deceptive act was in connection with a consumer transaction.

To prevail on a KCPA claim, a plaintiff must allege that "the parties meet the KCPA's definitions of 'consumer' and 'supplier,' that the consumer and supplier were involved in a

'consumer transaction,' that the consumer sustained an injury from the supplier's alleged violations, and that the supplier's actions were deceptive or unconscionable."[14]

Here, if there was a "consumer transaction," Plaintiff was the "consumer" and Defendants were the "suppliers." Consequently, law enforcement was not a party to the "consumer transaction." Therefore, even if Defendant Cornelius, as the supplier, made a false statement to law enforcement, because law enforcement is not the consumer, the "deceptive or unconscionable act" was not "in connection with" a consumer transaction. As such, Plaintiff has failed to state a plausible KCPA claim. Thus, this claim against Defendants must be dismissed. Accordingly, the Court dismisses Counts I and II against Defendants.

**IT IS THEREFORE ORDERED** that Defendants Kathryn Cornelius and Sound Physicians Emergency Medicine of Kansas, LLC's Motion to Dismiss (Doc. 29) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 18th day of February, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[14] *Robbins v. Dyck O'Neal, Inc.*, 447 F. Supp. 3d 1100, 1108 (D. Kan. 2020) (further citations omitted).