# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARYUM AUTUMN TAHIRKHELI,

    Plaintiff,

v.

ASCENSION VIA CHRISTI HOSPITAL PITTSBURG, INC., SOUND PHYSICIANS EMERGENCY MEDICINE OF KANSAS, LLC, and KATHRYN M. CORNELIUS, M.D.,

    Defendants.

Case No. 24-2426-EFM-BGS

## MEMORANDUM & ORDER
## GRANTING MOTION TO STRIKE

NOW BEFORE THE COURT is Defendants' joint "Motion to Strike Plaintiff's Late Produced Expert Report and Exclude Related Testimony at Trial."  For the reasons set forth herein, Defendants' motion is **GRANTED**.[1]

## GENERAL FACTUAL BACKGROUND

Plaintiff alleges violations of the Emergency Medical Treatment and Labor Act, 42 U.S.C.A. § 1395dd ("EMTALA") (Count I), violations of the Kansas Consumer Protection Act (Count II), and intentional infliction of emotional distress (Count III) as a result of May 24, 2024, ER visit for Plaintiff's minor daughter ("the minor child").[2]  Plaintiff alleges that Defendants violated EMTALA by failing to: (1) determine whether the minor child was suffering from an emergency medical condition, (2) obtain informed consent from Plaintiff as to the minor child's treatment, and (3) involve Plaintiff in

---

[1] The Court notes that the Defendants failed to comply with D. Kan. Rules. 37.1 and 37.2 prior filing the present motion. In the interest of judicial economy, the Court will waive these procedural requirements and resolve the motion on its substantive merits.  The Court instructs the parties, however, that failure to comply with these Rules will not be accepted going forward.

[2] These three claims remain pending against Defendant Ascension. Only Count III for intentional infliction of emotional distress remains pending against Defendants Sound Physicians and Cornelius.  (*See* Doc. 36.)

the treatment plan for the minor child. (*See generally* Doc. 1.) Plaintiff also alleges that Defendants violated the privacy and safety of Plaintiff and her minor child.[3] (*Id.*) Defendants generally deny Plaintiff's allegations.

## DEFENDANTS' MOTION TO STRIKE

In their motion to strike, Defendants seek to exclude the "revised" report of Plaintiff's retained expert Ashley Carter. (Doc. 116.) The revised report was submitted to Defendants four months after Plaintiff's expert disclosure deadline. Defendants seek to preclude Ms. Carter from offering the revised opinions at trial.

Pursuant to Fed. R. Civ. P. 26(a), an expert opinion must contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i). "The expert report is necessary to allow the opposing party a reasonable opportunity to prepare for cross examination and possibly arrange for expert testimony from other witnesses if necessary." *Spirit Aerosystems, Inc. v. SPS Tech., LLC*, No. 09-1144-EFM-KGG, 2013 WL 6196314, *7 (D. Kan. Nov. 27, 2013) (citing *Henderson v. Nat'l R.R. Passenger Corp.*, 412 Fed. Appx. 74, 80 (10th Cir.2011)).

Federal Rule 26(e) governs supplementation of disclosures. It holds that a party who has made a Rule 26(a) disclosure is required to must timely supplement or correct that disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1). As to experts who have disclosure a report under Rule 26(a)(2)(B), the Rule states that "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

---

[3] More specific factual allegations are summarized in the District Court's Memorandum & Order on Defendants' Motion to Dismiss (Doc. 36, at 1-3). That summary is incorporated by reference.

It is appropriate for the Court to exclude a supplemental expert report pursuant to Fed. R. Civ. P. 37(c) that "states an additional opinion or seeks to strengthen an opinion expressed in the original report." *Id.* (citing *Cook v. Rockwell Int'l Corp.*, 580 F.Supp.2d 1071, 1169 (D.Colo.2006)). "'To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given.'" *Beller v. United States*, 221 F.R.D. 689, 695 (D. N.M. 2003)) (cited with approval by *Spirit Aerosystems, Inc.*, 2013 WL 6196314, at n.49).

The original Scheduling Order in this case includes a July 11, 2025, deadline for Plaintiff's expert disclosures.[4] (Doc. 51, at 5.) Ashley Carter was timely designated as an expert by Plaintiff. While Plaintiff provided Carter's *curriculum vitae*, no expert report or other information required by Fed. R. Civ. P. 26(a)(2) was submitted. (Doc. 71.) On July 24, 2025, Defendants served their objection to the expert designation (Doc. 75), which led to Plaintiff providing Carter's report on July 28, 2025. (Doc. 76.) Defendants subsequently retained expert(s) and timely served their expert designation on September 19, 2025. (Doc. 84.)

A month after designating their experts, Defendants deposed Carter on October 17, 2025. (Doc. 85.) During the deposition, Carter stated that she intended "amend" her report after the deposition "based on [her] final review" of the medical record that she conducted on October 11, 2025, in preparation for her deposition. (Doc. 116-1, at 36:23-37:18; 42:13-43:3.) Carter testified that she found additional "inconsistencies" in the medical record that needed to be included in her report. (*Id.*)

Plaintiff served Carter's revised report on November 18, 2025 – which is more than four months after Plaintiff's expert deadline. (Doc. 116-2.) She did so without prior consultation with

---

[4] Although the Scheduling Order was amended (Doc. 98), the expert disclosure dates were not changed.

3

defense counsel (Doc. 116, at 2) or seeking leave from the Court to amend her expired expert deadline. Defendants have provided a highlighted copy of the revised report, which underscores the 12 extensive differences between Carter's revised report and her original report. (Doc. 116-5.) Notably, the summary opinion at the conclusion of Carter's report is entirely rewritten. (*Id.*, at 4-5.) According to Defendants, Carter's deposition testimony regarding her anticipated amendments do not track with her "revised" report. (Doc. 116, at 2; *compare* Doc. 116-1, at 44:17-67:10 with Doc. 116.5.)

Plaintiff responds that Carter's "supplemental report is based exclusively on medical records that Defendants produced." (Doc. 142, at 1.) Tellingly, however, Plaintiff glosses over the fact that these records were produced by Defendant prior to her original expert deadline.

It is noteworthy that Carter's stated reason for the revised report is that she noticed further medical record inconsistencies during her review of the records in preparation for her deposition. She did not indicate, for instance, that the changes were necessitated by receiving new or additional medical records or information from Defendants. In other words, as the facts have been presented to the Court, all of the medical records that form the basis for Carter's revised November 2025 opinions were provided to Carter before Plaintiff's expert report deadline in July 2025. Plaintiff does not, nor can she, dispute the fact that Carter's November 2025 revised report resulted from a simple re-review of the documents she already had in her possession.

As Defendants argue, Cater "did not 'revise' her original report to correct inaccuracies. Her November report is more accurately characterized as an 'additional' report than a 'revised' report. She simply waited until October to finish her work." (Doc. 116, at 2.) In other words, the only reason the November 2025 changes to Carter's report were not included in her original July 2025 report is a lack of timely effort and diligence by Carter.

Supplementation of expert reports is only allowed in "certain limited circumstances." *Spirit Aerosystems, Inc.*, 2013 WL 6196314, *6 (citing *Cook*, 580 F.Supp.2d at 1169). More specifically, courts

4

in this District have held that supplemental reports are allowed "when a party or expert learns that the original report is incomplete or incorrect in some material respect." *Id.* (citations omitted).

> Specifically, that means a supplemental report may correct inaccuracies or fill in the blanks of an incomplete report based on information that was not available at the time of the original report. <u>But a lack of diligence in pursuing information that could have been available at the time of the original report does not mean the same as information that was not available</u>. [The Federal Rules do] not allow a party to submit an amended or rebuttal report not based on new information.

*Id.* (emphasis added) (citations omitted).

Plaintiff argues that because Defendants were able to question Carter at her deposition, "the supplemental report of the Plaintiff's expert sent to the Defendants on November 18, 2025, should not have been an unfair surprise." (Doc. 142, at 2.) Plaintiff's argument is thoroughly unpersuasive. Regardless of whether Defendants were fairly or unfairly "surprised" by Carter's changes, the fact remains that this deposition testimony occurred approximately **three months** after Plaintiff's expert disclosure deadline. Merely warning Defendants that the supplemental report was forthcoming does not make it timely or compliant with the Federal Rules of Civil Procedure.

The Court finds Plaintiff's provision of Carter's supplemental expert report to be untimely. As such, Defendants' motion to strike the November 2025 supplemental report (Doc. 116) is **GRANTED**.

    IT IS SO ORDERED.

Dated January 16, 2026, at Wichita, Kansas.

                                            /s/ BROOKS G. SEVERSON
                                            Brooks G. Severson
                                            **U.S. Magistrate Judge**